CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 23 2010

JULIA C. DUDLEY, CLERK
BY:
  DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SCOTT M. BOGER | ) |
| | ) Civil Action No. 7:10cv00175 |
| Petitioner, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| WARDEN S.K. YOUNG, | ) |
| | ) By: Samuel G. Wilson |
| Respondent. | ) United States District Judge |

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 by an inmate of the Virginia Department of Corrections ("the VDOC"), Scott M. Boger, who has been unsuccessfully battling the VDOC's administrative policy that requires inmates to pay $12 to cover the cost of obtaining their birth certificates as a part of reentry planning and preparation. According to Boger's interpretation of Virginia law, the VDOC is responsible for paying all fees that are necessary to obtain the required documents. He has steadfastly refused to pay the fee even in the face of losing good-time credit and having his good-time classification level unfavorably increased. Boger was charged with refusal to participate in reentry planning or preparation and was found guilty following a hearing, which resulted in a less advantageous good-time classification level and the loss of 90 days of accumulated good-time credit.

His appeals within the VDOC were unsuccessful, and he filed a petition for writ of habeas corpus with the Supreme Court of Virginia. That court held that habeas corpus did not lie in the matter and dismissed his petition. Boger, in turn, filed his current habeas petition in this court, and the respondent has moved to dismiss, claiming that the Supreme Court of Virginia's decision was on the merits and, therefore entitled to deference under 28 U.S.C. § 2254(d).

Though this court disagrees with the respondent's characterization of the Supreme Court of Virginia's decision as a decision on the merits, the court nevertheless dismisses the petition on a more basic ground: though Boger attempts to position his dispute as a constitutional claim, it is in reality nothing more than a dispute that the VDOC's administrative policy is inconsistent with Virginia law on the question of who is responsible for paying the $12 fee. This is nothing more than a claim that the revocation of his good-time credit and the increase of his good-time classification level was in violation of Virginia law. The federal habeas statute "unambiguously provides that a federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" Wilson v. Corcoran, 562 U.S. ___, 2010 WL 4394137, at *2 (Nov. 8, 2010) (quoting 28 U.S.C. § 2254(a)). A claim that a state prisoner is being held in violation of state law will not suffice. Accordingly, the court dismisses Boger's petition.

## I.

Virginia Code §53.1-10 lists the "duties and powers" of the Director of the VDOC. The list includes making "application to the appropriate state and federal entities so as to provide any prisoner who is committed to the custody of the state a Department of Motor Vehicles approved identification card . . . , a copy of his birth certificate if such person was born in the Commonwealth, and a Social Security card . . . [.]" Va. Code § 53.1-10(7). As the VDOC's chief executive officer, the Director has promulgated an operating procedure relating to his responsibilities in obtaining proper identity documents for prisoners to use upon their release.

(See Resp't's Mem. in Supp. of Mot. Dismiss, Ex. I, at 26–27, ECF No. 11-2 (reproducing OP 820.2, VIII).)[1]

According to the operating procedure, any prisoner (other than a death row inmate) who does not have a copy of his birth certificate in his "institutional Criminal Record will be given 30 days to produce a copy . . . ." (Id.) "If no copy of a birth certificate is received within 30 days," the applicable operating procedure provides that "an application shall be submitted to the appropriate State to obtain an official copy." (Id.) The prisoner is responsible for paying the fee required by the vital records office, and if he has insufficient funds to cover the cost of the application, the VDOC will "loan" him the money. (Id.) The operating procedure provides that any prisoner who refuses to make a "reasonable effort" to obtain his birth certificate will be charged with the offense of refusing to participate in reentry planning or preparation, which carries a "mandatory penalty" of 90 days loss of accumulated good time and subjects the inmate to a less advantageous good-time credit classification level. (Id.) The operating procedure is implemented at the prisoner's "annual review." (Id.)

While Boger was incarcerated at the Augusta Correctional Center, the warden notified him of his responsibility to obtain his birth certificate. Boger indicated that he did not intend to comply because Vital Records charged a $12 processing fee, and he believed the Director was responsible for obtaining the required documents and therefore could not shift payment of that

---

[1] The court notes that the pertinent section of the Director's operating procedure, OP 820.2 VIII, was subsequently reclassified as OP 820.2 VII after its application to Boger's case. For purposes of clarity, the court will refer to the original version of the operating procedure which is reproduced in full on pages 26 and 27 of Exhibit I of the VDOC's Memorandum in Support of its Motion to Dismiss, filed at ECF No. 11-2.

3

fee to Boger. Correctional officials did not charge Boger immediately. Instead, Boger's correctional counselor wrote him on June 23, 2009:

> As of today's date we have not received a copy of your birth certificate from your family nor have you applied for one. Be advised that there is now a deadline to get this completed and it is no longer your Annual Review. This is just to make you aware that in the next couple of months those of you who have yet to comply will have to make the decision to apply for the birth certificate or take the charge and everything that comes along with it. You will be receiving a pass from me sometime in the coming weeks to do this. At that time you can let me know what you have decided to do.

(Id. at 51, ECF No. 11-3.)

Boger then filed an "informal complaint" stating: "[Virginia] law says the VDOC Director is to provide these for me upon my release, not that the VDOC Director can coerce me to pay for it myself." (Id. at 53, ECF No. 11-3.) Boger's counselor replied:

> The Code of Virginia 53.1-10 (7) states that one of the powers and duties of the Director of the [VDOC] is to make an application to the appropriate state and federal entity so as to provide you with certain documents, the birth certificate being one of them. This does not state that the document in question will be purchased for you. It states that an application will be made. When you come to my office to apply for your birth certificate, I will provide you with the appropriate application and even help you complete it. Once this is done, the duties of the Director will have been satisfied. The application will then be sent out, and you will be charged $12.00 to cover the cost of your birth certificate. This document will be given to you upon your release from the [VDOC].

(Id.) Boger, in turn, filed a formal grievance which was denied at every level. Boger then wrote Gene M. Johnson, the Director reiterating his position and his intention to apply for a writ of mandamus in the Virginia Supreme Court to compel the Director to perform his obligations under Virginia law. Boger stated: "I'm not going to pay $12 for something you were obligated to do. You are hereby formally notified of my refusal to comply with OP 820.2 VIII B." (Id. at 65, ECF No. 11-3.)

4

Still, correctional officials did not charge Boger with an institutional infraction. Unsatisfied, Boger wrote his counselor asking when he could expect to be charged, concluding that he would "appreciate" being charged so he could "take the issue to court." (Id. at 79, ECF No. 11-4.) Eventually, Boger got his wish, had a hearing, was convicted, lost 90 days good time credit, filed internal appeals, lost those appeals, had his good time credit level increased, filed a petition for writ of habeas corpus in the Supreme Court of Virginia, and the Supreme Court of Virginia, citing Carroll v. Johnson, 278 Va. 683, 694 (2009), dismissed his petition on the ground that habeas "did not lie in the matter." (Id. at 98, ECF No. 11-4.)

## II.

Boger's federal habeas petition raises numerous claims, all either tied to Boger's claim that the Director's operating procedure conflicts with Va. Code § 53.1-10(7) or to some perceived failure to follow applicable Virginia procedures. Respondent has moved to dismiss on the ground that the Supreme Court of Virginia dismissed Boger's state habeas petition on its merits, and that dismissal is entitled to deference under 28 U.S.C. §2254(d) of the Anti-Terrorism and Effective Death Penalty Act of 1996. The court concludes that the Supreme Court of Virginia's decision was not based upon the underlying merits but rather was based upon its determination that his claim was not cognizable under Virginia's writ of habeas corpus. Nevertheless, the Court dismisses Boger's petition because it is in reality nothing more than a claim that the revocation of his good-time credit and the increase of his good-time classification level was in violation of Virginia law.

The Virginia Supreme Court did not render a decision on the underlying merits. Rather, it concluded that habeas corpus did not "lie in the matter" and cited to Carroll v Johnson. On the

page cited to in that earlier opinion, the Virginia Supreme Court explained that its decision "[did] not dramatically expand habeas corpus jurisdiction" but rather only concerned cases "in which an order, entered into petitioner's favor, interpreting a conviction or a sentence, [would], as a matter of law and standing alone, directly impact the duration of a petitioner's confinement." Carroll, 278 Va. at 694. Its holding "[did] not expand habeas corpus jurisdiction to cases in which an order entered in the petitioner's favor [would] only give rise to a possibility of reducing the petitioner's term of imprisonment." Id. Consequently, according to that court:

> disputes which only tangentially affect an inmate's confinement, such as prison classification issues concerning the rate in which a prisoner earns good conduct or sentence credit, or challenges to parole board decisions, are not proper matters for habeas corpus jurisdiction because an order entered in the petitioner's favor in those cases will not result in an order interpreting convictions or sentences that, on its face and standing alone, will directly impact the duration of the petitioner's sentence.

Id. Although in dismissing Boger's petition, the Supreme Court of Virginia did not fully explain how these principles applied to preclude it from reviewing Boger's petition on the merits, that is of no concern here. The point here is simply this: it clearly indicated that its decision was not based on the underlying merits but rather on the unavailability of habeas. Consequently, this court turns to the availability of federal habeas.

"The [federal] habeas statute unambiguously provides that a federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" Wilson v. Corcoran, 562 US ___, 2010 WL 4394137, at *2 (citing 28 U.S.C. §2254(a)). The Supreme Court has "repeatedly held that federal habeas corpus relief does not lie for errors of state law." Id. (internal quotations omitted). Here, it is abundantly clear that Boger seeks a writ for precisely that purpose. Though he garnishes his

claims with references to the due process and equal protection clauses of the United States Constitution, his arguments are frivolous.² "Is not enough to note that a habeas petitioner *asserts* the existence of a constitutional violation; unless the federal court agrees with that assertion, it may not grant relief." Id. at *4. Since Boger has not raised even a colorable federal claim, the court dismisses his petition.

## III.

For the reasons stated above, the Court dismisses Boger's petition.

**ENTER:** November 23, 2010.

UNITED STATES DISTRICT JUDGE

---

² Boger quibbles about the State's alleged failure to strictly comply with its procedures. Even if true:

> [a]lleged violations of due process in the deprivation of a protectable interest are to be measured against a federal standard of what process is due and that standard is not defined by state-created procedures, even when those state-created procedures exceed the amount of process otherwise guaranteed by the Constitution.

Riccio v. County of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990).